IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARROL WILBURN | : | |
|     Plaintiff | : | |
| v | : | Civil Action No. CCB-05-526 |
| JOHN DOE, *et al.* | : | |
|     Defendants | : | |

o0o

## MEMORANDUM

This civil rights action was filed on February 22, 2005, raising claims that plaintiff was subjected to cruel and unusual punishment as a federal pre-trial detainee at the Maryland Correctional Adjustment Center (MCAC). Paper No. 1. Now pending in this case are defendants' motions to dismiss or for summary judgment. Papers No. 17 and 18. Plaintiff has filed a response in opposition to the motions. Papers No. 20 and 21. Upon review of the papers filed, this court finds a hearing in this matter unnecessary. Local Rule 105.6 (D. Md. 2004). For the reasons that follow, defendants' motions shall be granted.

**Background**

Plaintiff alleges that during his pre-trial detention he was required to spend up to 23 hours per day in his cell. Paper No. 1 at 2. He also claims that he was denied access to his appointed attorney and to his family through denial of phone calls and was denied access to the prison law library. *Id*. He further claims that he was subjected to harsher treatment than inmates who had already been found guilty of crimes because he was denied all contact with his family. *Id*. Plaintiff alleges that his requests to be transferred to a county jail a short distance away were denied because his custody was the responsibility of the Federal Bureau of Prisons. *Id*.

In his motion for summary judgment, defendant Dotson, Warden of MCAC, asserts that

1

the United States Marshal Service has an agreement[1] with the Maryland Department of Public Safety and Correctional Services (MDPSCS) to temporarily house federal inmates in Division of Correction facilities. Paper No. 17 at 2 and Ex. 1. Plaintiff was in the custody of the Marshal Service as a pre-trial detainee in late 2003. *Id*. Pursuant to the agreement, plaintiff was housed at MCAC as well as the Maryland Reception Diagnostic and Classification Center (MRDCC). *Id*. According to Dotson, plaintiff was held at MCAC from December 23, 2003, to February 3, 2004; from July 23, 2004, to July 28, 2004; from October 14, 2004, to October 15, 2004; and from October 20, 2004, to October 21, 2004. *Id*. at Ex. 2. Plaintiff was held at MRDCC from December 19, 2003, to December 23, 2003; from July 22, 2004, to July 23, 2004; and from October 15, 2004, to October 20, 2004. *Id*.

Defendant Dotson asserts that federal pre-trial inmates who are not on segregation are housed in the F-pod housing unit of MCAC. *Id*. at Ex. 1, 2-3. Inmates housed on F-pod are permitted 14 hours per day out of their cells, during which time they have access to a recreation room that contains telephones. *Id*. In addition, they are permitted to use the out of cell time to shower or for outdoor recreation. *Id*. The inmates housed on F-pod are permitted access to a computer that provides legal resources and they are permitted to request "legal citations" which are delivered to their cells. *Id*. Visitation with family and attorneys is unlimited and inmates are permitted calls to their attorneys via the recreation room phone. *Id*. Defendant also asserts that,

---

[1] *See* 18 U.S.C. § 4002 (authorizing Attorney General to contract with state or local government to provide for facilities to house federal inmates); 18 U.S.C. § 4013 (authorizing Attorney General to make payments for provision of such facilities); and 28 C.F.R. § 0.111(o) (requiring United States Marshal to acquire adequate detention facilities).

with the exception of two nights[2] at MCAC, plaintiff was housed on F-pod.  *Id*. at Ex. 1 and 2.  Based on plaintiff's housing assignment during the majority of the time he was incarcerated at MCAC, defendant deduces that he was provided with the same privileges afforded to other inmates housed on F-pod.  *Id*. at 3.

Defendant Hughes, the United States Marshal for the District of Maryland, seeks dismissal of the complaint based upon plaintiff's failure to comply with administrative remedy procedures; defendant's lack of individual involvement in the conditions alleged in the complaint; plaintiff's failure to comply with the Federal Tort Claims Act; and the doctrine of sovereign immunity.  Paper No. 18 at 2–3.  Specifically, Hughes asserts that the complaint contains no allegation that he was individually responsible for any of the alleged deprivations, nor is he a party to the Intergovernmental Services Agreement (ISA) negotiated between the Marshal Service and the DPSCS.  *Id.* at 4.  Because the day-to-day operation of the facility and care of the federal detainees is delegated to the contracted local facility operators, Hughes claims no personal knowledge of the conditions as they existed during plaintiff's incarceration at MCAC. *Id*. at 5.  In addition, Hughes had no indication from inspections conducted by the Marshal Service or from DPSCS staff that MCAC did not meet the minimum standards required by the ISA.  *Id*.

Alternatively, Hughes alleges that the complaint may be dismissed on summary judgment based on the merits of the claims asserted.  *Id*. at 3.  Hughes notes that plaintiff pled guilty to charges involving fraud on October 15, 2004, and was sentenced to 20 months imprisonment by

---

[2] Plaintiff was housed on E-pod on October 14, 2004, when he arrived at MCAC at 10:22 p.m., until he left the next morning at 9:19 a.m..  Paper No. 17 at Ex. 1 and 2.  He was again housed on E-pod on October 20, 2004, when he arrived at MCAC at 1:35 p.m., until he left again the next day at 7:46 a.m.  *Id*.

this court. *Id.* at 1. He claims the complaint does not contain any allegation as to how plaintiff's alleged inability to speak to his attorney adversely affected plaintiff's legal defense. *Id.* at 6. With respect to the specific conditions alleged by plaintiff, Hughes incorporates by reference the assertions contained in the affidavit of Donna Hansen, which is appended to Warden Dotson's motion. *Id.* at 5; *see also* Paper No. 17 at Ex. 1.

In his response in opposition to the motions filed by defendants, plaintiff alleges that he was not permitted to use the phone at MCAC from December 23, 2003, until January 9, 2004. Paper No. 20. He further claims that all federal inmates were locked down for 20 hours per day while he was at MCAC and that recreation was provided only once a week in a 25 foot by 25 foot cage. *Id.* He admits there was a computer available, but denies that there was any assistance available for using the computer and claims there were no request forms of any kind provided. *Id.* He further alleges that visitation was limited to one visit per week and that MCAC is infested with cockroaches and rats. *Id.* He does not address the allegation that he failed to comply with administrative remedy procedures but avers that any complaint voiced was met with the glib remark that this is "the way the United States Marshal Service want[s] it done." *Id.*

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see*

*also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file."  Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324.  However, "'a mere scintilla of evidence is not enough to create a fact issue.'"   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.

1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Exhaustion

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), no action shall be brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law until he or she has exhausted available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 738-39 (2001). Thus, the exhaustion requirements apply to plaintiff's §1983 claim asserted against defendant Dotson. The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

There is no dispute that plaintiff did not avail himself of the administrative remedy procedures in place at MCAC regarding the allegations against defendant Dotson. *See* Paper No. 1 at 1 and Paper No. 20 at 2. Prior to the passage of the PLRA, this Court was permitted to stay a prisoner case while administrative remedies were being exhausted. That option, however, is no longer available. "The current exhaustion provision differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter*, 534 U.S. at 524. Accordingly, plaintiff's §1983 claim is subject to dismissal for failure to exhaust administrative remedies.

To the extent that plaintiff has named defendant Hughes in his official capacity, the exhaustion requirements of the Federal Tort Claims Act (FTCA) apply. Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1346(b). As a waiver of sovereign immunity, the FTCA is to be narrowly construed and is not to be extended by implication. *See United States v. Nordic Village, Inc*., 503 U.S. 30, 34 (1992). Because the sovereign's consent to waiver of its immunity is to be narrowly construed, actions brought under the FTCA must be filed in exact compliance with its terms. To proceed under the FTCA, a claimant cannot file a lawsuit unless he has first presented an administrative claim to the appropriate federal agency and it has been finally denied or the agency has not made a final determination after the passage of six months. 28 U.S.C. § 2675(a). Compliance with the administrative claim process is a jurisdictional prerequisite to suit under the FTCA. *See Kokotis v. United States Postal Service*, 223 F. 3d 275, 278 (4th Cir. 2000). Plaintiff does not dispute that he has not complied with the exhaustion requirements of the FTCA. Paper No. 20. Accordingly, to the extent that he is asserting an FTCA claim against defendant Hughes, it is subject to dismissal.

*Bivens* Claim

The only remaining claim is plaintiff's claim against defendant Hughes for violation of his Fourteenth Amendment rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The conditions claim, as it pertains to defendant Hughes, is based on his supervisory role with respect to federal pre-trial detainees. In order to impose

liability on supervisory personnel three factors must be present: (1) the supervisor must have actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), *citing Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990).[3]

In his dispositive motion, defendant Hughes asserts that the day-to-day operations of MCAC as well as the daily care of federal pre-trial detainees are delegated to the DPSCS staff. Paper No. 18 at 5. The court is well aware from the administration of its ongoing criminal docket that there are issues related to the conditions of confinement of federal pretrial detainees in the absence of a federal pretrial detention center.  Wilburn has not, however, alleged any personal knowledge by Marshal Hughes of an unconstitutional condition of confinement actually suffered by Wilburn sufficient to impose liability under *Bivens.*  To demonstrate Hughes's actual or constructive knowledge of the plaintiff's constitutional injury, the plaintiff must show the following: (1) Hughes's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff.  *Schulz v. Braga,* 290 F.Supp.2d 637, 652 (D.Md. 2003) (citing *Shaw,* 13 F.3d at 799).  In light of the fact that the Marshals Service had a contract that delegated plaintiff's care and custody to DPCS,

---

[3] Although most of the decisions on supervisory liability, including *Shaw,* arose out of actions under 42 U.S.C. § 1983, they are analogous to *Bivens* actions. *Haynesworth v. Miller,* 820 F.2d 1245, 1248, n.1 (D.C. Cir. 1987).

and the absence of any specific allegations of Hughes's first-hand knowledge of the details of plaintiff's conditions of confinement at MCAC during the time he was housed there, the only remaining basis for liability is that of *respondeat superior*. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in *Bivens* actions. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Accordingly, defendant Hughes is entitled to summary judgment in his favor with respect to the *Bivens* claim.

## Conclusion

Based on the undisputed evidence that plaintiff failed to exhaust administrative remedies as required by the PLRA and the FTCA, the constitutional claim raised against defendant Dotson and any claim raised against defendant Hughes in his official capacity are dismissed. The absence of any evidence upon which supervisory liability may be based with respect to defendant Hughes entitles him to summary judgment on the *Bivens* claim. A separate order follows.

| | |
|---|---|
| __March 22, 2006__ | _____/s/_____ |
| Date | Catherine C. Blake |
| | United States District Judge |